IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JORGE GONZALEZ,

         Plaintiff,       OPINION AND ORDER

 v.

                        13-cv-702-wmc

SGT. KUSSMAUL, DR. HOEM, C.O.
BARR, DR. AMARANTE, and BOB
VICKERY,

         Defendants.

---

   In this *pro se* prisoner case, the court previously granted plaintiff Jorge Gonzalez leave to proceed on (1) a First Amendment claim against defendant Sergeant Kussmaul for allegedly denying telephone use; and (2) an Eighth Amendment deliberate indifference claim against defendants Kussmaul, Correctional Officer Barr, Dr. Hoem, Dr. Amarante and Bob Vickery for allegedly denying medical treatment for serious mental health needs.  (Dkt. #21.)  Before the court are several motions and other filings, all by plaintiff Gonzalez, which can be grouped roughly into the following categories: (1) filings entirely unrelated to the claims for which plaintiff has been granted leave to proceed; (2) filings concerning his inability to prosecute this lawsuit because of lack of funds for postage and lack of access to law library and other legal resources; (3) motions to compel; (4) motions for a temporary restraining order; and (5) motions for assistance in recruitment of counsel.  For the reasons that follow, the court will deny all motions.

OPINION

**I.  Motions and Filings Unrelated to Claims at Issue in this Lawsuit**

As an initial matter, Gonzalez has filed numerous declarations and other documents raising concerns entirely unrelated to the claims for which he has been granted leave to proceed in this lawsuit. (2/19/14 Declaration (dkt. #41) (complaining of retaliation generally); 3/4/14 Declaration (dkt. #44) (complaining of retaliation in alleged confiscation of personal photos and religious materials and issuing of conduct reports); 4/18/14 Declaration (dkt. #52) (complaining of lost legal documents sent from his mother and inappropriate, sexual pat down by non-defendant correctional officer); 5/16/14 Declaration (dkt. #56) (complaining again about sexual touching by non-defendant correctional officer).)

Except for concerns about funds for postage and access to legal resources for purposes of prosecuting this lawsuit, which this court addresses below, none of these filings are properly before this court. To the extent his voluminous filings can be construed as a request for leave to amend his complaint, the court also denies that request as none of the possible claims or defendants are sufficiently close to justify joining them in this lawsuit. *See* Fed. R. Civ. P. 20 (authorizing joinder of multiple defendants into one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances,

against dozens of different parties, into one stewpot."). Of course, Gonzalez may pursue claims for retaliation generally or sexual assault in separate lawsuits.

**II. Motions and Filings Concerning Lack of Postage and Access to Legal Resources**

In a filing dated February 11, 2014, Gonzalez complains of being denied access to the law library after being placed on cell confinement. (Dkt. #40.) More specifically, Gonzalez contends that he needed access to the lab library in order to "answer the defendants' brief before the pretrial conference scheduled on February 25, 2014." (*Id.*) Despite this lack of access, however, Gonzalez *was* able to file (1) a response to defendant's answer (dkt. #38); (2) a reply in support of his motion for preliminary injunction (dkt. #39); and (3) a declaration concerning management of his inmate trust account, among other issues (dkt. #41). Moreover, plaintiff acknowledges in his filing that he was placed in cell confinement because of a contraband string found in his cell. Finally, defendants also submit an affidavit stating that while Gonzalez's request for law library access on February 4, 2014, was denied, he had been offered library access on January 30, 2014, and declined to go. (Defs.' Resp. (dkt. #45).)

This lawsuit does not provide Gonzalez with an opportunity to escape punishment for violating prison rules. At most, it requires that he be given access to legal materials within those rules. At worst, since plaintiff appears able to pursue his claims even under current restrictions, plaintiff's claim would appear to be related to actions of others, not part of this suit and not before this court.

3

In other filings, Gonzalez complains generally about access to the law library and states that the lack of access "hinders my ability to self litigate." (1/9/14 Declaration (dkt. #25).) Again, Gonzalez's filings to date do not demonstrate any prejudice. Indeed, Gonzalez is a prolific filer. Plaintiff also fails to show any prejudice in the alleged delay in receiving copies of the complaint and order. (1/14/14 Declaration (dkt. #27).) Nor to date has this case required legal research. The court has explained the law surrounding plaintiff's claims in the screening order. At this stage, plaintiff should focus on collecting evidence to support those claims, although plaintiff has no current obligation to submit this evidence to the court at this time.

Lastly, Gonzalez claims that he lacks funds in his inmate trust account to cover postage for his legal filings. (2/19/14 Declaration (dkt. #41).) Once again, however, the docket undermines this complaint. Since this case was screened to go forward, Gonzalez has not only filed 27 documents in roughly six months, a pace of roughly one filing per week, he has pointed to no adverse action suffered because of his inability to move or respond. Accordingly, Gonzalez has not shown that his alleged lack of funds for postage in anyway hindered his efforts to litigate this case.

**III. Motions to Compel**

Plaintiff seeks an order compelling defendant Amarante to respond fully to interrogatories. (Mot. to Compel (dkt. #50).) Specifically, plaintiff challenges Dr. Amarante's responses to four interrogatories as "incomplete." For the reasons that follow, the court rejects these challenges and will deny the motion.

In Interrogatory No. 1, Gonzalez requests all places of employment and volunteer positions from 2010 to 2014.  In response, Amarante states that she was employed by the Department of Corrections from 2008 to 2010.  During that time, Amarante worked at WSPF, where Gonzalez is incarcerated.  The court agrees with defendants that absent some specific showing by Gonzalez, Amarante's employment post-2010 (in other words, after her employment with WSPF ended) is neither relevant to Gonzalez's claim nor reasonably calculated to lead to the discovery of relevant information.

In response to Interrogatory No. 2, seeking information about discipline while employed with the DOC, Amarante responded that she had "not been disciplined for any actions concerning plaintiff, plaintiff's claims, or claims similar to those made by plaintiff." (Defs.' Resp. (dkt. #53) 2.)  The court similarly finds this response adequate to address Gonzalez's interrogatory.  Any additional information about disciplinary actions is neither relevant to Gonzalez's claim nor reasonably calculated to lead to the discovery of relevant information.

In response to Interrogator No. 5, asking for any other names used besides Maria Indonsia Amarante, she denied using any other names during her employment with the DOC.  Absent some further showing by plaintiff, the court finds defendant's implicit limitation on plaintiff's question reasonable.  More specifically, plaintiff offers no information about Amarante's other or prior names relevant to Gonzalez's claim or reasonably calculated to lead to the discovery of relevant information.

Gonzalez's final challenge is to Amarante's response to Interrogatory No. 6, seeking information about her role in approving his transfer to WSPF in 2009 and her

awareness of his suicidal thoughts and use of anti-depressants at that time. Amarante appears to respond thoroughly and completely to the interrogatory. Perhaps Gonzalez is dissatisfied with her response that she was *not* involved in the transfer decision, but that does not serve as a basis for requiring an additional response. If anything, it is grounds to seek potentially conflicting documentary evidence and/or to notice Amarante's deposition.

Plaintiff also brings a motion to compel an unaltered copy of the Echo Unit Log from July 5, 2013, and access to all video recordings from the Echo Unit that recorded the incidents on July 5, 2013, and June 24, 2013. (Mot. to Compel (dkt. #60).) In response, defendants explain that the redacted unit log provides all of the information relevant to Gonzalez's claims and that information concerning *other* inmates is not only irrelevant, but its release would implicate the privacy rights of those inmates. The court agrees with defendants. Absent some basis for believing the *in camera* inspection suggested by Gonzalez would be productive, the court will deny that suggestion as well. As for access to all video recordings, defendants explain that these recordings do not exist.

In short, defendants have sufficiently responded to Gonzalez's request, and there is nothing the court can reasonably order produced on this record. Accordingly, the court will also deny this second motion to compel.[1]

---

[1] In a January 2014 declaration, Gonzalez complains of lack of access to his medical file. (1/9/14 Declaration (dkt. #25).) To the extent he still has not obtained full access, plaintiff can still serve a discovery request on defendants requesting a copy of his file.

### IV. Motions for Preliminary Injunction

Plaintiff has also filed two motions for preliminary injunction seeking (1) an order requiring mental health treatment (dkt. #8); and (2) an order "transferring him to a mental health prison such as [the Wisconsin Resource Center] so that he can receive the mental health treatment he needs" (dkt. #57). In the screening order, the court required defendants to respond to the first motion for preliminary injunction, specifically directing defendants' attention to the part of the medical record allegedly indicating that Gonzalez will not be seen for further psychiatric services. (12/23/13 Order (dkt. #21) 8 (citing dkt. #9-1 at p.1).)

In response to the first motion, defendants argue that there has been no showing of deliberate indifference. On the contrary, defendants maintain that: (1) Gonzalez does not have serious mental health issues; and (2) Vickery's determination that Gonzalez did not need further psychiatric services was based on his repeated refusal of such services. With regard to the first argument, defendants appear to conflate a classification as "MH-1," indicating that Gonzalez is properly housed at WSPF, with a finding of no serious mental health needs under the Eighth Amendment. Gonzalez's multiple self-harm or suicide attempts at least suggest otherwise. Still, Gonzalez's apparent, repeated refusals to engage in psychiatric treatment undermines any hope of demonstrating defendants' deliberate indifference to his serious mental health needs, especially in light of Gonzalez's medical record showing roughly monthly meetings with the psychiatric services unit during the period leading up to his lawsuit. (Declaration of Stacey Hoem, Ph.D., Ex. 101 (dkt. #33-1).) *See Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (affirming

7

judgment in favor of medical personnel on a claim of deliberate indifference where inmate was the sole cause of delay in treatment); *Walker v. Peters*, 233 F.3d 494, 500 (7th Cir. 2000) (holding that prison doctor who withheld HIV medication did not act with deliberate indifference where inmate refused to take HIV test).

Moreover, Gonzalez's request for a Madison psychiatrist to evaluate his mental health under these circumstances suggests more a disagreement with defendants' diagnosis and recommended course of treatment, then proof of deliberate indifference in violation of the Eighth Amendment. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) ("[M]ere disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation."); *Snipes v. DeTella*, 95 F.3d 586, 590-91 (7th Cir. 1996) ("Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.") (internal citation omitted).

On this record, therefore, the court cannot find that Gonzalez has demonstrated a likelihood of success on the merits. As for the likelihood of irreparable harm, the current record indicates that defendants are taking reasonable steps to keep Gonzalez safe from further self-harm. The court will, therefore, deny plaintiff's pending motions for preliminary injunction without prejudice. For a renewed motion to be successful, plaintiff will need to present evidence that defendants are not meeting their on-going obligation to address his mental health needs or insure his safety.

Case: 3:13-cv-00702-wmc Document #: 65 Filed: 07/31/14 Page 9 of 11

**V. Motions for Assistance in Recruiting Counsel**

Finally, Gonzalez has renewed his request for this court's assistance in recruiting pro bono counsel. (Dkt. ##43, 51, 62.) In its order screening his complaint to go forward, the court explained the standard for granting assistance in recruiting counsel, and denied Gonzalez's request without prejudice. (Dkt. #21.) Gonzalez already demonstrated that he has made reasonable efforts to find a lawyer on his own and has been unsuccessful. (12/23/13 Order (dkt. #21) 8 (noting that Gonzalez had submitted four letters from attorneys who declined to represent him); *see also* 4/14/14 Mot. for Assistance in Recruiting Counsel, Exs. (dkt. #51-1) (filing five additional rejection letters); 6/13/14 Mot. for Assistance in Recruiting Counsel, Exs. (dkt. #62-1) (attaching seven additional rejection letters).)

The next question is whether Gonzalez meets the legal standard for appointment of counsel, in the sense that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654, 655 (7th Cir. 2007). In making this determination, the court must consider the "litigant's demonstrated ability -- or inability -- to meet th[e] demands" of litigation. *Id.* at 663. In his most recent filings, Gonzalez posits several reasons for why he is unable to litigate this action: (1) his imprisonment limits his ability to conduct legal research and conduct an investigation including questioning of potential witnesses; (2) Spanish is his first language; (3) an attorney would be better able to question witnesses at trial; and (4) expert medical testimony is needed. (Mots. for Assistance in Recruiting Counsel (dkt. ##43, 51, 62).)

The initial three reasons are simply insufficient to appoint counsel, at least as this time. With respect to his first reason, while prison does limit Gonzalez's ability to conduct research and gather evidence in support of his claims, this is true for all prisoners filing lawsuits in this court, and the court does not have the ability to recruit counsel for all prisoner plaintiffs. As for his second basis, Gonzalez's numerous filings to date have been lucid and well-written. While the court fully credits Gonzalez's representation that English is his second language, he appears to have no difficulty in communicating in that language, at least in the written form. As for Gonzalez's third basis, an inability to prosecute his claim at trial, the court agrees that questioning witnesses and conducting cross examination may exceed his abilities, but the court need not recruit counsel at this time to address this concern. If Gonzalez's claims advance past the summary judgment stage, the court will reevaluate Gonzalez's request for trial counsel.

Gonzalez's final argument -- that the need for a medical expert necessitates assistance in appointment of counsel -- presents the strongest reason for his request. Still, the court need not recruit counsel for Gonzalez to obtain an expert opinion. Gonzalez should make a good faith effort to retain a medical expert. If he is unable to do so *and* he can present meaningful proof that defendants are ignoring a serious mental health condition and/or need for treatment, then the court will evaluate whether assistance in recruiting expert testimony is required.[2]

---

[2] To date, the record demonstrates that defendants made good faith efforts to provide psychiatric services which, at some point, plaintiff either refused or abused those sessions, and that Gonzalez does not suffer from a mental health condition would warrant renewing those services.

Accordingly, the court finds Gonzalez has not, at least at this time, met his burden of showing that this is one of the extraordinary times where recruitment of counsel is necessary. His motion will be denied, therefore, without prejudice, subject to reconsideration when the disputed issues in this case become more distinct and/or plaintiff's limitations as an advocate starkly present themselves.

## ORDER

IT IS ORDERED that:

1) Plaintiff Jorge Gonzalez's motions for assistance in recruiting counsel (dkt. ##43, 51, 62) are DENIED without prejudice;

2) Plaintiff's motions to compel discovery (dkt. ##50, 60) are DENIED;

3) Plaintiff's motions for preliminary injunction (dkt. ##8, 57) are DENIED.

Entered this 31st day of July, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge